**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellant,

v.                                                                              No. 98-4866

RONNIE CHRISTOPHER DAVIS,
Defendant-Appellee.

Appeal from the United States District Court
for the Western District of North Carolina, at Asheville.
Lacy H. Thornburgh, District Judge.
(CR-98-200)

Argued: January 28, 2000

Decided: March 2, 2000

Before LUTTIG and KING, Circuit Judges, and
Norman K. MOON, United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Brian Lee Whisler, Assistant United States Attorney,
OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North
Carolina, for Appellant. Stephen Paul Lindsay, LINDSAY & HENS-
LEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Mark T.
Calloway, United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Charlotte, North Carolina, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The district court dismissed an indictment against defendant-appellee Ronnie Davis for money laundering and conspiracy to money launder, and the United States appeals. Because the district court was in error as to its understanding of the elements of money laundering, and therefore as to its decision to dismiss two counts of the nine-count indictment, we vacate the order of dismissal with respect to those counts.

I.

The government alleged in its bill of indictment that Davis amassed a $23,000 gambling debt to Richard McMahan, who operated an illegal gambling and bookmaking business. In order to satisfy partially this debt, Davis agreed to borrow $15,000 to purchase an automobile, the title to which would be in his name, for McMahan's use. From 1990 to 1994, Davis made most of the payments on the loan, by checks drawn on his credit-union account, while McMahan retained exclusive possession of the automobile. The government alleged that McMahan used the automobile in conducting his illegal gambling business, and that the arrangement whereby Davis retained title to and made payments on the loan for the vehicle was designed to conceal the true owner and use of the automobile. In 1994, McMahan sold the Jeep for $8,000, kept the proceeds, and directed Davis to transfer title to the new owner.

In April 1998, Davis was indicted for conspiracy to money launder. The government obtained a superseding bill of indictment, which added substantive money laundering and bank fraud charges to the money laundering conspiracy charge, and Davis moved to dismiss the indictment in full. The district court granted the motion to dismiss, and the government now appeals with respect to two of the nine

2

counts included in the indictment: one for substantive money laundering and one for conspiracy to money launder.

## II.

With respect to the substantive money laundering count at issue on appeal (count nine of the superseding bill of indictment), the government alleged that Davis' involvement in the sale of the vehicle by McMahan to a third party constituted money laundering. Apparently believing that money laundering occurs, within the meaning of 18 U.S.C. § 1956(a)(1), only where the property involved in the transaction at issue constitutes the proceeds of a felony committed by the defendant, the district court noted that Davis had not committed a felony and dismissed the indictment. Because we conclude that section 1956(a)(1) does not require that a person charged with money laundering actually have committed the felony that produced the proceeds at issue, we vacate the district court's order of dismissal with respect to this count.

Section 1956(a)(1) provides that money laundering occurs only where an individual "know[s] that the property involved in a financial transaction represents the proceeds of some form of unlawful activity." Section 1956(c)(1) defines "unlawful activity" as "activity that constitutes a felony under State, Federal, or foreign law." Although a defendant thus must know that the property involved in the transaction constitutes the proceeds of a felony, nothing in the text of section 1956 suggests that the defendant must have committed that felony himself, and Circuit precedent confirms that such is not required. See United States v. Campbell, 977 F.2d 854, 857-59 (4th Cir. 1992) (affirming the money laundering conviction of a defendant who engaged in a real estate transaction involving the proceeds of drug sales but who did not participate in the drug sales).

The question remains whether the indictment raises allegations that, if proven at trial, will satisfy the requirement that Davis knew that the transaction upon which this count of the indictment was based -- the sale of the vehicle and attendant transfer of title -- involved the proceeds of a felony. A reasonable jury could find that both the vehicle and the title thereto were proceeds of McMahan's illegal gambling and bookmaking business, and the operation of such a business

3

constitutes a felony under section 1955.**1** Moreover, given that the government has alleged that Davis purchased the vehicle at issue for McMahan to satisfy gambling debts incurred to McMahan's gambling and bookmaking business, a reasonable jury could find that Davis knew that the sale of the car and attendant transfer of title involved the proceeds of that business. We therefore conclude that the district court erred in dismissing the money laundering charge based on Davis' involvement in the sale of the automobile. **2**

III.

With respect to the conspiracy count now on appeal (count two of the superseding bill of indictment), the government alleged that Davis conspired to launder money, in violation of sections 1956(a)(1)(A)(i) and (B)(i). The court dismissed both of these allegations for the same reason it dismissed the substantive money laundering count discussed above: because Davis had not committed a felony. As we have explained, a defendant need not actually have committed a felony to be charged with money laundering, and we therefore vacate the district court's order of dismissal with respect to the section 1956 conspiracy charges.

The government also alleged that Davis conspired to violate section 1957, which prohibits the knowing engagement "in a monetary transaction in criminally derived property that is of a value greater than $10,000." 18 U.S.C. § 1957(a). In dismissing this allegation, the district court merely stated, in apparent reliance on its earlier conclusion that a defendant who has not committed a felony cannot be charged with money laundering, that "the federal money laundering statute was not intended to encompass the payment of a gambling debt." J.A. 80. We need not address the question of Congress' intent with regard to gambling debts in enacting the money laundering stat-

_____

**1** Section 1955 provides, in relevant part:

> Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined under this title or imprisoned not more than five years, or both.

**2** In so holding, we need not reach the question whether any of Davis' own gambling activities amounted to a felony under state or federal law.

4

utes because, as we have noted, this is not a case involving merely the discharge of such a debt. Rather, this case involves the proceeds of an illegal gambling and bookmaking business, an independent federal felony that serves as the criminal activity underlying the section 1957 charge against Davis.

Indeed, Davis abandons the district court's reasoning in defending the dismissal of the section 1957 conspiracy charge, arguing instead that the charge should have been dismissed because the vehicle was sold for $8,000, whereas section 1957 only applies to transactions involving more than $10,000, and because no "monetary transaction" occurred, within the meaning of section 1957. First, we reject Davis' argument that he did not engage in a transaction involving property worth more than $10,000 because the vehicle was clearly worth more than $10,000 at the time of the transaction wherein Davis purchased it, given that a $15,000 loan was required to finance the purchase. Second, with regard to Davis' claim that no "monetary transaction" occurred, that term is defined as including transactions considered "financial transaction[s]" under section 1956(c)(4)(B). See 18 U.S.C. § 1957(f)(1). Section 1956(c)(4)(B), in turn, defines "financial transaction" as including "a transaction involving the use of a financial institution which is engaged in . . . interstate or foreign commerce." Because Davis' purchase of the vehicle involved the procurement of a loan from such a financial institution, we conclude that he was involved in a "monetary transaction" within the meaning of section 1957, and therefore vacate the district court's dismissal of the section 1957 conspiracy charge against him.**3**

_____

**3** We find the remainder of Davis' arguments to be without merit. First, Davis argues that the district court's order of dismissal should be affirmed because the government failed to introduce evidence to support its allegations when prompted to do so by the court. However, the evidence that Davis contends the government should have introduced regarded disputed facts properly considered by a jury at trial, rather than by the district court at the indictment stage. Second, Davis appears to suggest that dismissal was an appropriate response to a vindictive prosecution. However, we find nothing in the record that even arguably suggests prosecutorial misconduct of any kind.

CONCLUSION

For the reasons stated herein, the order of dismissal entered by the district court with respect to counts two and nine of the superseding bill of indictment is vacated, and the case is remanded for further proceedings.

VACATED AND REMANDED

6